**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL FEDERATION OF FEDERAL          )
EMPLOYEES, FD-1, IAMAW, AFL-CIO,        )
1225 New York Avenue, N.W., Suite 450,  )
Washington, D.C.  20005,                )
                                        )
and                                     )
                                        )
INTERNATIONAL ASSOCIATION OF            )
MACHINISTS AND AEROSPACE WORKERS,       )
AFL-CIO,                                )
9000 Machinists Place,                  )
Upper Marlboro, MD 20772,               )
                                        )
and                                     )
                                        )
SEAFARERS INTERNATIONAL UNION OF        )
NORTH AMERICA, AFL-CIO,                 )
5201 Auth Way,                          )
Camp Springs, MD 20746,                 )          Case No. _____
                                        )
and                                     )          COMPLAINT FOR
                                        )          DECLARATORY AND
NATIONAL ASSOCIATION OF GOVERNMENT      )          INJUNCTIVE RELIEF
EMPLOYEES, INC.,                        )
1020 North Fairfax, Suite 200,          )
Alexandria, VA 22314,                   )
                                        )
and                                     )
                                        )
INTERNATIONAL BROTHERHOOD OF            )
TEAMSTERS,                              )
25 Louisiana Avenue, N.W.,              )
Washington, D.C. 20001,                 )
                                        )
and                                     )
                                        )
FEDERAL EDUCATION ASSOCIATION, INC.,    )
1201 Sixteenth Street, N.W., Suite 117, )
Washington D.C., 20036,                 )
                                        )
and                                     )

METAL TRADES DEPARTMENT, AFL-CIO,                )
815 16th Street, N.W.,                            )
Washington, D.C. 20006,                           )
                                                  )
and                                               )
                                                  )
INTERNATIONAL FEDERATION OF                       )
PROFESSIONAL AND TECHNICAL                        )
EMPLOYEES, AFL-CIO & CLC,                         )
501 3rd Street, N.W., Suite 701,                  )
Washington, D.C. 20001,                           )
                                                  )
and                                               )
                                                  )
NATIONAL WEATHER SERVICE EMPLOYEES                )
ORGANIZATION,                                     )
601 Pennsylvania Avenue, N.W., Suite 900,         )
Washington, D.C. 20004,                           )
                                                  )
and                                               )
                                                  )
PATENT OFFICE PROFESSIONAL ASSOCIATION,           )
P.O. Box 25287,                                   )
Alexandria, VA 22313,                             )
                                                  )
and                                               )
                                                  )
NATIONAL LABOR RELATIONS BOARD UNION,             )
26 Federal Plaza, Room 3614,                      )
New York, NY 10278,                               )
                                                  )
and                                               )
                                                  )
NATIONAL LABOR RELATIONS BOARD                    )
PROFESSIONAL ASSOCIATION,                         )
1015 Half Street, S.E., Room 5125,                )
Washington, D.C. 20003,                           )
                                                  )
and                                               )
                                                  )
MARINE ENGINEERS' BENEFICIAL                      )
ASSOCIATION, DISTRICT No. 1 PCD, AFL-CIO,         )
444 N. Capitol Street, N.W., Suite 800,           )
Washington, D.C. 20001                            )
                                                  )

|                                                                 |     |
|-----------------------------------------------------------------|-----|
|                              Plaintiffs,                        | )   |
|                                                                 | )   |
|                   v.                                            | )   |
|                                                                 | )   |
| DONALD J. TRUMP,                                                | )   |
| President of the United States,                                 | )   |
| 1600 Pennsylvania Avenue, N.W.,                                 | )   |
| Washington, D.C.  20035,                                        | )   |
|                                                                 | )   |
| and                                                             | )   |
|                                                                 | )   |
| JEFF T.H. PON,                                                  | )   |
| Director of the Office of Personnel Management,                 | )   |
| 1900 E Street, N.W.,                                            | )   |
| Washington, D.C.  20415,                                        | )   |
|                                                                 | )   |
| and                                                             | )   |
|                                                                 | )   |
| UNITED STATES OFFICE OF                                         | )   |
| PERSONNEL MANAGEMENT,                                           | )   |
| 1900 E Street, N.W.                                             | )   |
| Washington, D.C. 20415,                                         | )   |
|                                                                 | )   |
|                              Defendants.                        | )   |
|                                                                 | )   |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This is an action brought by the above-captioned Plaintiff Unions for declaratory and injunctive relief with respect to three Executive Orders issued by Defendant President Donald J. Trump on May 25, 2018: (1) Order No. 13,836; (2) Order No. 13,837; and (3) Order No. 13,839 (collectively, the "Executive Orders"). Each of the Executive Orders purports to implement, or direct Defendant the Office of Personnel Management ("OPM") to issue regulations regarding the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101, et seq., (the "FSLMR Statute"), which governs labor relations in the federal civilian workplace and other parts of Title 5 of the U.S. Code governing the working conditions of federal employees.

Defendant Trump has no authority to issue these Executive Orders from either the

Constitution itself or from Congress. To the degree the President has such authority, portions of the Executive Orders are plainly unlawful as they conflict with, or seek to impermissibly rewrite portions of, the FSLMR Statute, without authority from Congress. Therefore, the Executive Orders must be declared invalid and a permanent injunction issued to prohibit their implementation.

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Plaintiffs seek declaratory judgement pursuant to 28 U.S.C. § 2201.

## VENUE

3. Venue is proper in this judicial district and division under 28 U.S.C. § 1391(e) because the Plaintiff unions represent thousands of federal workers within the District in which this Court sits and are subject to the unlawful actions brought forth in this Complaint. As such, Plaintiffs' injuries occur within this District. In addition, Defendants have their principal offices located in the District of Columbia.

## PARTIES

4. Plaintiff National Federation of Federal Employees, FD-1, IAMAW, AFL-CIO ("NFFE"), is an unincorporated association with its principal place of business at 1225 New York Ave., N.W., Suite 450, Washington, D.C. 20005. NFFE is affiliated with its parent organization International Association of Machinists and Aerospace Workers. NFFE is certified as the exclusive bargaining representative of approximately 110,000 federal employees. As exclusive representative of these employees, NFFE advances the social and economic welfare and education of federal employees by representing their interests through collective bargaining, filing and arbitrating grievances to uphold the provisions in

4

such agreements, filing complaints with administrative agencies, lobbying Congress for legislative action, and promoting labor-management partnerships in agency decision-making.

5. Plaintiff International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") is a labor organization of nearly 600,000 members across the United States, with its principal place of business at 9000 Machinists Place, Upper Marlboro, MD 20772. The IAM is the parent organization of plaintiff National Federal of Federal Employees, and in addition represents approximately 20,000 federal government workers across the United States.

6. Plaintiff Seafarers International Union of North America, AFL-CIO ("SIUNA") is an unincorporated association with its principal place of business at 5201 Auth Way, Camp Springs, MD 20746. The SIUNA consists of twelve autonomous affiliate unions, representing workers domestically and internationally in the maritime trades as well as other industries. The Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District ("SIU, AGLIWD"), an affiliate of the SIUNA, represents approximately 5,500 federal employee mariners working on vessels operated by four federal agencies. These mariners work on vessels sailing deep sea in international waters, as well as on vessels which sail throughout the United States in the Great Lakes and inland waterways. As exclusive bargaining representative of these mariners the SIU, AGLIWD represents federal mariners by negotiating over conditions of employment, ensuring safe and healthy working conditions, administering collective bargaining agreements through grievances, arbitrations and actions before administrative agencies, when necessary. Additionally, the SIU, AGLIWD assists mariners with obtaining benefits, providing educational resources

and working collaboratively with agencies to promote effective and efficient government operation.

7. Plaintiff National Association of Government Employees, Inc. ("NAGE") is a national labor organization and is affiliated with the Service Employees International Union. NAGE is incorporated in the state of Delaware with its place of business at 159 Thomas Burgin Parkway, Quincy, MA 02169. NAGE, and its local units, are the certified exclusive bargaining representative of approximately 110,000 employees, including nearly 75,000 federal employees. NAGE represents the interests of its federal bargaining unit employees, through the negotiation of collective bargaining agreements with government agencies, the filing of grievances to enforce provisions of the applicable collective bargaining agreements, arbitrating grievances that are not resolved during the grievance process, and filing complaints with administrative agencies such as the Merit Systems Protection Board, Equal Employment Opportunity Commission, and the Office of Special Counsel. NAGE lobbies Congress in support of legislation in the interest of bargaining unit employees. NAGE seeks to promote effective labor-management relations in the interest of NAGE bargaining unit employees, the agencies they serve, and the American public.

8. Plaintiff International Brotherhood of Teamsters ("Teamsters") is an unincorporated association with its headquarters located at 25 Louisiana Avenue, N.W., Washington, DC. 20001. Local affiliates of the Teamsters in at least six states serve as the exclusive collective bargaining agent of approximately 1,700 federal employees in agencies such as the Department of the Navy, Veterans Affairs, and the Air National Guard. In representing these federal employees, affiliates of the Teamsters negotiate and administer collective bargaining agreements, file and process grievances and complaints with federal agencies,

lobby Congress on relevant legislation, and promote labor's participation in agency decision-making impacting the federal workforce.

9.  Plaintiff Federal Education Association, Inc. ("FEA") is a unified state affiliate of the National Education Association. The FEA is a labor organization and professional organization that represents and is comprised of professional educators employed by the Department of Defense Education Activity in both the Department of Defense's overseas and stateside dependent schools. The FEA is incorporated in the State of Delaware and a not-for-profit, non-stock, corporation. It is suing in its representative capacity on behalf of approximately 6,000 educators, including Education Support Professionals ("ESPs"), it represents. The interests of its members that the FEA seeks to protect in this action are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in this suit.

10. Plaintiff Metal Trades Department, AFL-CIO, ("MTD"), is an unincorporated association with its principal place of business at 815 16th Street, N.W., Washington, D.C. 20006. The MTD is a department of the AFL-CIO with 17 national and international union affiliates. The MTD and its affiliated metal trades councils are certified as the exclusive bargaining representative of approximately 21,000 federal employees. As exclusive representative of these employees, the MTD and its affiliated metal trades councils advance the social and economic welfare and education of federal employees by representing their interests through collective bargaining, filing and arbitrating grievances to uphold the provisions in such agreements, filing complaints with administrative agencies, lobbying Congress for legislative action, and promoting labor-management partnerships in agency decision-making. The MTD brings this action on behalf of itself, its Metal Trades Councils, affiliates

and members.

11. Plaintiff International Federation of Professional and Technical Engineers, AFL-CIO & CLC ("IFPTE"), is an unincorporated association with its principal place of business at 501 3rd St., N.W., Suite 701, Washington, D.C. 20001. IFPTE and its local affiliated unions are certified as exclusive bargaining representatives of approximately 20,000 federal employees in diverse occupations across various agencies. As such, IFPTE and its local union affiliates advance the collective social and economic welfare and education of these employees and promote an effective and efficient government. As the exclusive representative of federal employees, IFPTE and its affiliates represent their interests by bargaining collectively, promoting labor-management partnerships in agency decision making, lobbying Congress for legislative action, upholding collectively bargained agreements through grievances and arbitrations, and filing complaints with administrative agencies as necessary.

12. Plaintiff National Weather Service Employees Organization ("NWSEO") is an unincorporated labor organization certified by the Federal Labor Relations Authority as the exclusive representative of approximately 4,000 employees of the National Ocean and Atmospheric Administration, U.S. Department of Commerce. Among the employees which NWSEO represents are the forecasters, technicians and support personnel of the National Weather Service nationwide; the technicians who track and command the nation's weather satellites from Wallops Island, Virginia and Suitland, Maryland; the civilian crews of NOAA's "Hurricane Hunter" aircraft; the attorneys in NOAA's Office of General Counsel; and the hurricane researchers and other scientists and support personnel at the Atlantic Oceanographic and Meteorological Laboratory in Key Biscayne, Florida. Among

its objectives are the protection of members' employment and the improvement of working conditions through the negotiation and administration of collective bargaining agreements and through lobbying Congress for favorable legislation.

13. Plaintiff Patent Office Professional Association is an unincorporated labor organization certified by the Federal Labor Relations Authority as the exclusive representative of approximately 8,500 patent examiners and other professional employees of the U.S. Patent and Trademark Office, U.S. Department of Commerce, nationwide. Among its objectives are the protection of members' employment and the improvement of working conditions through the negotiation and administration of collective bargaining agreements and through lobbying Congress for favorable legislation.

14. Plaintiff National Labor Relations Board Union ("NLRBU") is an unincorporated association with its principal place of business at 26 Federal Plaza, Room 3614, New York, NY 10278.   NLRBU is certified as the exclusive bargaining representative of approximately 750 federal employees. As exclusive representative of these employees, NLRBU advances the social and economic welfare of federal employees by representing their interests through collective bargaining, filing and arbitrating grievances to uphold the provisions in collective bargaining agreements it has negotiated, filing complaints with administrative agencies, formal consultations with Agency representatives, lobbying Congress for legislative action, and promoting joint labor-management involvement in agency decision-making. The NLRBU is not affiliated with any other labor organization and relies on its member officers and volunteers who are members of its bargaining units to carry out its representational duties.

15. Plaintiff National Labor Relations Board Professional Association ("NLRBPA"), is an

unincorporated association with its principal place of business at 1015 Half Street, S.E., Room 5125, Washington, D.C. 20003. The NLRBPA is certified as the exclusive bargaining representative of approximately 140 attorneys and FOIA Specialists at NLRB's Headquarters. As exclusive representative of these employees, NLRBPA advances the social and economic welfare and education of federal employees by representing their interests through collective bargaining, filing and arbitrating grievances to uphold the provisions in such agreements, filing complaints with administrative agencies, lobbying Congress for legislative action, and promoting labor-management partnerships in agency decision-making. The NLRBPA is not affiliated with any other labor organization and relies on its member officers and volunteers to carry out its representational duties, and as a result, would be particularly hard hit by the challenged Executive Orders.

16. Plaintiff Marine Engineers' Beneficial Association, District No. 1 PCD, AFL-CIO ("MEBA"), is an unincorporated association with its principal place of business at 444 N. Capitol Street, N.W., Suite 800, Washington, D.C. 20001. MEBA is certified as the exclusive bargaining representative of approximately 200 federal employees located within the Military Sealift Command. As exclusive representative of these employees, MEBA advances the social and economic welfare and education of federal employees by representing their interests through collective bargaining, filing and arbitrating grievances to uphold the provisions in such agreements, filing complaints with administrative agencies, lobbying Congress for legislative action, and promoting labor-management partnerships in agency decision-making.

17. Plaintiffs bring this action on behalf of themselves and their bargaining unit members, who are subject to Defendant Trump's unlawful Executive Orders. Plaintiffs are all "labor

organizations" as defined by 5 U.S.C. § 7103(a)(4).

18.   Defendant Donald J. Trump is the President of the United States of America. Defendant Trump issued the Executive Orders challenged in this Complaint in his official capacity.

19.   Defendant U.S. Office of Personnel Management ("OPM") is a federal agency, headquartered in Washington, D.C. Defendant OPM is charged by Defendant Trump with implementing the Executive Orders subject to this Complaint.

20.   Defendant Jeff T.H. Pon is the Director of OPM. Defendant Pon is named as a party in his official capacity, as he has been tasked to implement the Executive Orders.

## BACKGROUND & FACTS

### I.   The Civil Service Reform Act and the Federal Service Labor-Management Relations Statute

21.   In 1978, the Civil Service Reform Act ("CSRA") reformed the civil service of the United States federal government in response to an American sentiment of distrust of the government following the Watergate scandal and the Vietnam War.[1] The CSRA was comprehensive and addressed nearly all aspects of employment with the federal government.

22.   Prior to the CSRA, federal employees' right to form a union and bargain collectively was codified via a number of executive orders spanning the course of nearly two decades.

23.   The CSRA also included the Federal Service Labor-Management Relations Statute, ("FSLMR Statute"). The FSLMR Statute reaffirmed the rights of federal employees to

---

[1] See generally James L. Sundquist, "Jimmy Carter as Public Administrator: An Appraisal at Mid-Term," 39(1) Public Administration Review pp. 3-11; Located online at https://www.jstor.org/stable/3110370 (Last accessed June 7, 2018); Alan Campbell, "Civil service reform: A new commitment", 39(2) Public Administration Review, 99–103 (1978); Located online at https://www.jstor.org/stable/976281 (Last accessed June 7, 2018).

form unions, and the rights of those unions to bargain collectively over conditions of employment. 5 U.S.C. § 7101(a)(1). In passing Chapter 71 of the CSRA, Congress chose to legislate in an area which previously had been governed by executive authority.

24.    Congress's intent in passing the FSLMR Statute was to strengthen and promote collective bargaining in the federal sector. It was also created as a bulwark against unchecked executive power. During debate, Representative William L. Clay of Missouri, Chairman of the Civil Service Subcommittee, stated that "testimony was overwhelmingly in support of the thrust of the committee's legislation because the existing program was susceptible to the whims of an incumbent President, limited in its scope, management-oriented, and lacking in the opportunity for judicial review of decisions of the Federal Labor Relations Council." 124 Cong. Rec. 25613 (1978).

25.    In the FSLMR Statute, Congress specifically found that the existence of labor organizations, like unions, and collective bargaining on behalf of federal employees is in the public interest. 5 U.S.C. § 7101.

26.    The FSLMR Statute requires that Federal agencies recognize labor unions as the exclusive bargaining representatives of its employees. 5 U.S.C. § 7114(a)(1).

27.    The FSLMR Statute requires that all labor unions, including the Plaintiffs, represent "the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership." 5 U.S.C. § 7114(a)(1).

28.    Congress imposed the duty to bargain in good faith on both labor organizations and agencies. 5 U.S.C. § 7114(b). In doing so, it requires that terms and conditions of employment be mandatory subjects of collective bargaining. 5 U.S.C. § 7103(a)(14).

29.    Congress requires that "official time" be provided to federal employees so that they may

effectively bargain and administer the collectively bargained agreements required by the FSLMR Statute. 5 U.S.C. § 7131.

30. Congress also requires labor organizations and agencies to include a negotiated grievance procedure in every collective bargaining agreement, which must allow for employees to present their own grievances and for the labor organization to take those grievances to arbitration if unresolved. 5 U.S.C. § 7121.

31. Although the negotiated grievance procedure was intended to be broad in scope, Congress carved out specific matters. 5 U.S.C. § 7121(c) provides that the grievance procedure "shall not apply" to: "(1) any claimed violation of subchapter III of chapter 73 of this title (relating prohibited political activities); (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title; (4) any examination, certification, or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an employee."

32. Congress empowered the Federal Labor Relations Authority ("FLRA") to "provide leadership in establishing policies and guidance" related to matters under the FSLMR Statute and is responsible "for carrying out the purpose" of the FSLMR Statute. 5 U.S.C. § 7105.

33. The responsibilities of the FLRA include determining the scope of bargaining appropriate between federal employees and agencies. 5 U.S.C. § 7105.

**A.** **Official Time**

34. Congress established a statutory right for employees to use "official time" for certain representational activities. 5 U.S.C. § 7131.

35. The FSLMR Statute states that "any employee representing an exclusive

representative," or "in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest."  5 U.S.C. § 7131(a).

36.     Congress extended official time to any employee representing the union or by any bargaining unit employee "in connection with any other matter covered by [the Act]." 5 U.S.C. § 7131(d).

37.     Section 7131 defers official time decisions to agencies and labor organizations through the negotiation of collective bargaining agreements.

38.     The delegation of authority by Congress allows labor organizations a "reasonable" amount of time to perform representational duties, so long as it does not relate to the union's "internal business," such as soliciting members, electing union officials, or collecting dues. 5 U.S.C. § 7131(b).

**B.     Removals for Performance Deficiencies**

39.     The CSRA reformed federal personnel processes by basing actions on an employee's performance through performance appraisal systems.

40.     5 U.S.C. § 4302 directs federal agencies to develop one or more personnel appraisal systems that "(1) provide for periodic appraisals of job performance of employees; (2) encourage employee participation in establishing performance standards; and (3) use the results of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees."

41.     Congress further provides that, "[u]nder regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for . . .

14

reassigning, reducing in grade, or removing employees who continue to have unacceptable performance but only after an opportunity to demonstrate acceptable performance." 5 U.S.C. § 4302(c)(6).

42.    5 U.S.C. § 4302(c)(6) establishes an opportunity period for an employee to improve his or her performance, commonly known as a "performance improvement period" or "PIP".

43.    Congress chose not to define the length of a PIP, nor is it listed as a reserved management right under the Statute.

44.    Congress has authorized agencies and labor organizations to bargain over the length of PIPs or how long a bargaining unit employee will have to "demonstrate acceptable performance" before the agency takes actions against an employee for unacceptable performance.

## II.  President Trump's Executive Orders.

45.     It is well recognized that the "President's authority to issue an Executive Order 'must stem either from an act of Congress or from the Constitution itself.'" Building and Construction Trades Department, AFL CIO v. Allbaugh, 172 F.Supp.2d 138, 158 (D.D.C. 2001), rev'd. on other grounds, 295 F.3d 28, 32-22 (D.C. Cir. 2002), quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 585 (1952).

46.    An executive order without congressional or constitutional authority is unconstitutional.

47.    Congress grants the President authority to issue executive orders pursuant to the FSLMR Statute, in two specific areas:

    a.  First, the President may exclude an agency or subdivision thereof from coverage under the FSLMR Statute if the agency or subdivision thereof

15

"has as a primary function intelligence, counterintelligence, investigative, or national security work." 5. U.S.C. § 7103(b)(1);

b. Secondly, the President may issue executive orders suspending provisions of the FSLMR Statute "with respect to any agency, installation, or activity located outside the 50 States and the District of Columbia, if the President determines that the suspension is necessary in the interest of national security." 5 U.S.C. § 7103(b)(2).

48. Under 5 U.S.C. § 7134, Congress granted to "the [Federal Labor Relations] Authority, the general counsel, the Federal Mediation and Conciliation Service, the Assistant Secretary of Labor for Labor Management Relations, and the [Federal Service Impasses] Panel" the respective authority to "prescribe rules and regulations to carry out the provisions" of the FSLMR Statute.

## A.   **Executive Order No. 13,836**

49. Executive Order No. 13,836 ("Exec. Order No. 13,836") is titled "Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining." 83 FR 25329.

50. Exec. Order No. 13,836 orders agencies to engage in bad faith bargaining by requiring that every agency "shall…propose a new contract, memorandum, or other change in agency policy and implement that proposal if the collective bargaining representative does not offer counter-proposals in a timely manner." Section 5(c)(ii).

51. This provision of Exec. Order No. 13,836 purports to order agencies to engage in unilateral implementation of bargaining proposals, contrary to good-faith bargaining as required under the FSLMR Statute.

**B.**   <u>**Executive Order No. 13,837**</u>

52.   Executive Order No. 13,837 ("Exec. Order No. 13,837") is titled "Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use." 83 FR 25335.

53.   Exec. Order No. 13,837 purports to place additional restrictions on the use of official time under the FSLMR Statute. Such restrictions include limiting the time allowed to be spent on official time as well as how official time can and cannot be used.

54.   Exec. Order No. 13,837 attempts to legislate by using terminology not adopted by Congress. Specifically, "taxpayer-funded official time" and "union time rate" found in Sections 2(i) and 2(j) is the President's attempt to amend the definitions in the FSLMR Statute and to create new restrictions not authorized or intended by Congress.

55.   Section 3(a) of Exec. Order No. 13,837 directs agencies to engage in bad faith bargaining by refusing to agree to official time authorizations exceeding one hour per bargaining unit employee and stands for the proposition that anything above one hour is not "reasonable, necessary, and in the public interest" nor satisfies the "effective and efficient" goal.

56.   Section 3(a) of Exec. Order No. 13,837 conflicts with 5 U.S.C. § 7131, which provides that employees be granted official time for representational purposes in amounts agreed to by the agency and exclusive representative.

57.   Section 4(a) of Exec. Order No.13,837 limits the application of official time in certain situations and provides that employees "shall adhere to" certain "requirements."

58.   Section 4(a)(i) prohibits employees from lobbying Congress during paid time, except in

17

their official capacities as an employee.

59.     Section 4(a) of Exec. Order No. 13,837 conflicts with 5 U.S.C. § 7131, which allows official time for any activity related to union representation or other related matters covered under the FSLMR Statute.

60.     Section 4(a)(ii)(1) of Exec. Order No. 13,837 directs agencies to prevent bargaining unit employees from spending more than one-quarter of their paid time on official time, and further directs agencies to discount any amounts in excess from the amount available to the employees in the next fiscal year.

61.     Exec. Order No. 13,837 in conflict with the FSLMR Statute, as the President is effectively determining what is "reasonable," contrary to Congress's delegation of such determinations to labor organizations and agencies in bargaining.

62.     Section 4(a)(v) of Exec. Order No. 13,837 denies employees the use of official time for preparing or pursuing grievances, including arbitration of grievances brought against an agency except where 1) "such use is otherwise authorized by law or regulation," 2) an employee uses official time to "present a grievance brought on the employee's own behalf; or to appear as a witness in any grievance proceeding," or 3) where an employee uses official time to "challenge an adverse personnel action taken against the employee in retaliation for engaging in federally protected whistleblower activity."

63.     Congress, through 5 U.S.C. § 7131, explicitly allows employees acting on behalf of a labor organization to use official time in the above instances wherever provided for by contract between the labor organization and agency.

64.     Exec. Order No. 13,837 prohibits union representatives from providing representation

to bargaining unit members and assist with grievance drafting or proceedings, in direct conflict with 5 U.S.C. § 7131.

65. Exec. Order No. 13,837 issues instructions directly to employees prohibiting the use of official time above 25% of their time. Employees must now fear whether they are putting their jobs in jeopardy by exceeding that amount of official time even where it is legal under the law and the appropriate collective bargaining agreement.

66. Exec. Order No. 13,837 issues instructions directly prohibiting employees from using official time to "lobby." This effectively prohibits employees from meeting with members of Congress, petitioning members of Congress, and providing information to members of Congress. Employees must now fear whether they are putting their jobs in jeopardy by exceeding the amount of official time even where it is legal under the law and the appropriate collective bargaining agreement.

## C.      Executive Order No. 13,839

67. Executive Order No. 13,839 ("Exec. Order No. 13,839") is titled "Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles." 83 FR 25329.

68. Congress has specifically provided for merit system principles in 5 U.S.C. § 4302(c)(6) and other sections of Title 5.

69. Exec. Order No. 13,839 effectively bans at least two areas that have been found to be mandatory subjects of bargaining under the FSLMR Statute: the implementation and timing of performance improvement periods and the requirements of just cause for disciplinary actions (including progressive discipline) as enumerated in Douglas v. Veterans Administration, 5 MSPR 280 (1981) (the "Douglas Factors").

19

70.     The Douglas Factors are considered a *sine qua non* of federal sector labor agreements.

71.     Through the Douglas Factors, discipline and adverse actions must promote the efficiency of the service, meaning the penalty for proven misconduct may not exceed the bounds of reasonableness.

72.     Section 2(a) of Exec. Order No. 13,839 limits "opportunity periods to demonstrate acceptable performance under section 4302(c)(6) of title 5, United States Code, to the amount of time that provides sufficient opportunity to demonstrate acceptable performance."

73.     Section 3 of Exec. Order No. 13,839 purports to order agencies "to exclude from the application of any grievance procedures negotiated under section 7121 of Title 5, United States Code, any dispute concerning decisions to remove any employee from Federal service for misconduct or unacceptable performance."

74.     Section 4(a) of Exec. Order No. 13,839 purports to exclude from the grievance procedure "the assignment of ratings of record" and awards "of any form of incentive pay, including cash awards; quality step increases; or recruitment, retention or relocation payments."

75.     Section 4(c) of Exec. Order No. 13,839 states that "no agency shall . . . generally afford an employee more than a 30-day period to demonstrate acceptable performance under section 4302(c)(6) of title 5, United States Code, except when the agency determines in its sole and exclusive discretion that a longer period is necessary to provide sufficient time to evaluate an employee's performance."

76.     Congress has established the requirement of a negotiated grievance procedure set forth in 5 U.S.C. § 7121(a), and further has given authority to the labor organizations and

agencies to exclude "any matter" from the grievance procedure negotiated among the parties.

77.     5 U.S.C. § 7121(c) provides that the grievance procedure "shall not apply" to: "(1) any claimed violation of subchapter III of chapter 73 of this title (relating prohibited political activities); (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title; (4) any examination, certification, or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an employee." As such, the aforementioned sections of Exec. Order No. 13,839 are not among the five matters that Congress has expressly excluded from the negotiated grievance procedure.

**D.      Office of Personnel Management**

78.     On May 25, 2018, the Office of Personnel Management issued a press release regarding the Executive Orders. The press release reflects OPM's commitment to implementing the Executive Orders.

79.     On May 25, 2018, OPM conducted phone calls with media outlets and indicated that the Executive Orders were legally valid and would be implemented.

80.     On May 25, 2018, OPM conducted a phone call with interested labor organizations and indicated that the Executive Orders were legally valid and would be implemented.

81.     OPM expressed an intent to regulate the area of official time despite no authorization under the law to do so.

## CAUSES OF ACTION

**Count 1: Defendant Trump's Executive Orders are an Improper Attempt to Legislate in the Area of Labor Relations**

82.     Plaintiffs reassert and incorporate the assertions contained in paragraphs 1 through 81

herein.

83. This Court has the jurisdiction to grant relief when the President acts beyond the scope of his authority and violates the law, to the injury of an individual or organization.

84. "The President's power, if any, to issue [an Executive Order] must stem either from an act of Congress or from the Constitution itself." <u>Youngstown Sheet and Tube v. Sawyer</u>, 343 U.S. 579, 585 (1952). An executive order without such authority is unlawful. <u>Id</u>.

85. Defendant Trump has no constitutional authority to issue the Executive Orders because said orders reach beyond guidance and supervision to subordinates, and affect the rights of third parties, such as the Plaintiff Unions.

86. Defendant Trump's claim of Congressional authority to issue the Executive Orders under 5 U.S.C. § 7301 are invalid. 5 U.S.C. § 7301 merely states: "The President may prescribe regulations for the conduct of employees in the executive branch."

87. While 5 U.S.C. § 7301 is the source from which prior presidents have issued executive orders pertaining to drug testing the Federal workforce and ethics in the past, relations between federal agencies and the unions who represent federal employees is not "employee conduct."

88. Congress granted the President authority to issue executive orders pursuant to the FSLMR Statute in only two specific, narrow areas. First, the President may exclude an agency from coverage under the FSLMR Statute if the agency "has as a primary function intelligence, counterintelligence, investigative, or national security work." 5. U.S.C. § 7103(b)(1). Secondly, the President may issue executive orders suspending provisions of the FSLMR Statute "with respect to any agency, installation, or activity located outside the 50 States and the District of Columbia, if the President determines that the

suspension is necessary in the interest of national security." 5 U.S.C. § 7103(b)(2).

89.   The President's authority to issue executive orders under the broad, vague authority of 5 U.S.C. § 7301 has been superseded by the specific Congressional enactment of the FSLMR Statute, a comprehensive Statute regulating the relationship between Federal agencies and their employees' labor unions.

90.   Congress specifically gave the FLRA, an independent agency, the express authority to "provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter." 5 U.S.C. § 7105(a)(1).

91.   President Trump may not supplant the FLRA's authority granted by Congress.

92.   The Executive Orders were not issued under the narrow, specific authority granted by Congress to the President under either applicable provision of 5 U.S.C. § 7103(b).

93.   Congress, specifically, did not grant OPM the authority to prescribe rules and regulations to carry out the FSLMR Statute. See 5 U.S.C. § 7135 (granting authority to the FLRA, FMCS, and the Assistant Secretary of Labor for Labor Management Relations, among others).

94.   Therefore, the Executive Orders were issued without legal authority and are *ultra vires*.

95.   Further, OPM has no authority to issue regulations concerning the provisions of the FSLMR Statute.

**Count 2: Executive Order No. 13,837 is an Improper Attempt to Legislate Different Requirements Under U.S.C. § 7131 than Congress Prescribed**

96.   Plaintiffs reassert and incorporate the assertions contained in paragraphs 1 through 95 herein.

97.   Sections 2(j) and 3(a) of Exec. Order No. 13,837 unilaterally grant agencies the right to

limit the amount of official time given to employees, contrary to Congress's intent to allow the parties to agree upon an amount that is "reasonable" under 5 U.S.C. § 7131.

98.     Sections 4(a) Exec. Order No. 13,837 is contrary to the applicable provisions expressly prescribed by Congress because it impermissibly limits areas which the Congress designated as mandatory subjects of bargaining, and further it oversteps the parties' right to arbitrate disagreements over the reasonableness of discipline imposed for misuse of official time under the statutorily required grievance arbitration procedure.

99.     Giving effect to the conflicting requirements set forth in these sections would override Congress's legislative authority.

100.    Section 4(a)(i)'s provision preventing employees from engaging in direct lobbying activities during paid time, except in their official capacities as an employee, conflicts with 5 U.S.C. §§ 7102, 7131.

101.    Congress has broadly defined the use of official time for activities related to union representation or related to any matter covered by the Statute, except for those excluded by 5 U.S.C. § 7131(b). Exec. Order No. 13,837 would require agencies to propose to terminate these provisions in Plaintiffs' collective bargaining agreements, to the detriment of employees.

102.    Section 4(a)(v) is contrary to 5 U.S.C. § 7131 because it prevents official time use for the preparation of and pursuit of grievances, including arbitration of grievances, brought against an agency.

103.    The official time limitations set forth in Section 4(a)(ii) directly contradict 5 U.S.C. § 7131, which does not place a yearly limit on the use of official time and vests the labor organization and agency with the authority to determine what "reasonable" is through

bargaining.

104.    Via Section 4 the President assumes power for himself that Congress intended the FLRA, or the FSIP, to exercise.

**Count 3**: **Executive Order No. 13,839 is an Improper Attempt to Legislate a Performance System Different than Congress Prescribed**

105.    Plaintiffs reassert and incorporate the assertions contained in paragraphs 1 through 104 herein.

106.    Through Exec. Order No. 13,839, the President has acted beyond the scope of his authority and violated the law, to the injury of both the Plaintiff Unions and their members. The President does not have the authority to legislate under the Constitution and the actions sought under this Executive Order are a clear attempt to exercise legislative authority vested only in Congress.

107.    Limiting the opportunity period to 30 days under Section 4(c) is contrary to 5 U.S.C. § 4302(c)(6) which does not set a time limit but rather provides that employees are given "an opportunity to demonstrate acceptable performance."

108.    Section 4(c), which unilaterally grants agencies the ability to extend the opportunity period beyond 30 days, is contrary to the duty to bargain in good faith over conditions of employment as defined in 5 U.S.C. § 7106.

109.    Congress left the length of opportunity periods to be substantively negotiable as it is not listed as a management right in 5 U.S.C. § 7106. The President is outside of his authority as Congress delegated the authority to determine the scope of bargaining for opportunity periods to the FLRA.

**Count 4**: **The Executive Orders Restrict the Scope of Bargaining Beyond the Limits Set by Congress**

110.   Plaintiffs reassert and incorporate the assertions contained in paragraphs 1 through 109 herein.

111.   The Executive Orders restrict labor representatives and managers from agreeing to certain conditions, such as official time limitations, grievable performance awards, permissive topics, and free office space, at any point during the bargaining process.

112.   In Exec. Order No. 13,839, the President seeks to exclude additional matters from the negotiated grievance procedure not contemplated by Congress in 5 U.S.C. § 7121(c). These additional matters were left to labor organizations and agencies to negotiate.

113.   Congress, through the FSLMR Statute, gives labor organizations and agencies the authority to bargain over conditions of employment that do not interfere with reserved management rights found under 5 U.S.C. § 7106. By prohibiting certain conditions of employment not listed in 5 U.S.C. § 7106, the President has made those items effectively non-negotiable despite being substantively bargainable under the FSLMR Statute.

114.   Congress did not give the President authority to unilaterally decide which matters will and will not be subject to the negotiated grievance procedure. As such, Defendant Trump is clearly exceeding his authority through the Executive Orders.

**Count 5: The Executive Orders are an Attempt to Interfere with the Right Contained in 5 U.S.C. § 7211**

115.   Plaintiffs reassert and incorporate the assertions contained in paragraphs 1 through 114 herein.

116.   Congress has protected "the rights of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof," stating further those rights "may not be interfered with or denied." 5 U.S.C. § 7211.

117.    The wages, benefits and working conditions are established and/or affected by laws adopted by Congress. Therefore, employees, through labor organizations, express viewpoints on wages, benefits, and other working conditions by meeting with and petitioning Congress, as well as providing information to Congress and members thereof. Through his Executive Orders, the President is interfering with employees' rights under the law.

**Count 6: Executive Order No. 13,837 Violates the First Amendment to the U.S. Constitution**

118.    Plaintiffs reassert and incorporate the assertions contained in paragraphs 1 through 117 herein.

119.    Exec. Order No. 13,837 prohibits representatives of a labor organization from using official time to "prepare or pursue grievances (including arbitration of grievances) brought against an agency" pursuant to a collective bargaining agreement, yet provides an exception for employees working on their own behalf.

120.    In treating unions and their representatives differently from individual employees, Section 4(a)(v) is in violation of the First Amendment as it encroaches upon Plaintiffs' right to take collective action to pursue interests of their members.

**REQUEST FOR RELIEF**

WHEREFORE, the above-captioned Plaintiffs respectfully request that this Court enter an ORDER:

A.    Declaring that Executive Order Nos. 13,836, 13,837, and 13,839 are unlawful;

B.    Enjoining Defendant President Trump or his subordinates, including Defendants Pon and OPM, from enforcing Executive Order Nos. 13,836, 13,837, and 13,839;

C.    Granting Plaintiffs attorney's fees and costs; and

D.    Granting such other relief as found necessary and proper.

June 13, 2018                                   Respectfully Submitted,


/s/ Jefferson D. Friday
Jefferson D. Friday (application for
  readmission pending)
General Counsel
D.C. Bar No. 358253


/s/ Renee L. Mantone
Renee L. Mantone (application for
  admission pending)
Assistant General Counsel
D.C. Bar No. 1045053


/s/ Suzanne Summerlin
Suzanne Summerlin*
Assistant General Counsel
D.C. Bar No. 1044859
* Lead Counsel

National Federation of Federal Employees,
  FD-1, IAMAW, AFL-CIO
1225 New York Avenue, N.W., Suite 450
Washington, D.C. 20005
Phone: (202) 216-4420
Fax:    (202) 898-1861
Email: jfriday@nffe.org
Email: rcatalano@nffe.org
Email: ssummerlin@nffe.org

Attorneys for Plaintiff NFFE


/s/ Mark Schneider
Mark Schneider
General Counsel
D.C. Bar No. 385989
International Association of Aerospace
  Workers, AFL-CIO
9000 Machinists Place,
Upper Marlboro, MD 20772


Attorney for Plaintiff IAM

/s/ Sarah E. Suszczyk

Sarah E. Suszczyk (pro hac vice
    application pending)
Deputy General Counsel


/s/ Robert J. Shore

Robert J. Shore
Assistant General Counsel
D.C. Bar No. 999552

National Association of Government
    Employees, Inc.
1020 North Fairfax, Suite 200
Alexandria, VA 22314
Phone: (703) 519-0300
Fax:    (703) 519-0311
Email: ssuszczyk@nage.org
Email: rshore@nage.org

Attorneys for Plaintiff NAGE


/s/ Bradley Raymond

Bradley Raymond, Of Counsel
General Counsel
D.C. Bar No. 952184
International Brotherhood of Teamsters
Tel: 202-624-6847

Attorney for Plaintiff Teamsters


/s/ Keith R. Bolek

Keith R. Bolek
D.C. Bar No. 463129
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Phone: (202) 362-0041
Fax:    (202) 362-2640
Email:  kbolek@odonoghuelaw.com

Attorney for Plaintiff Metal Trades
Department and Seafarers International
Union of North America


/s/ Richard J. Hirn

Richard J. Hirn
Attorney at Law
General Counsel for National Weather
  Service Employees Organization and
  Patent Office Professional Association
D.C. Bar No. 291849
5335 Wisconsin Avenue N.W., Suite 440
Washington, D.C. 20015
Phone: (202) 274-1812
Email: richard@hirnlaw.com

Attorney for Plaintiffs Federal Education
Association, National Weather Service
Employees Organization, and Patent Office
Professional Association


/s/ Nils Djusberg

Nils Djusberg
D.C. Bar No.
Marine Engineers' Beneficial Association,
  District No. 1 PCD,
444 North Capitol Street, N.W., Suite 800
Washington, D.C. 20001
Phone: (202) 638-5355
Email: ndjusberg@mebaunion.org

Attorney for Plaintiff MEBA

## CERTIFICATE OF SERVICE

I certify that, on June 13, 2018, I electronically filed the foregoing document with the Clerk of

the Court for the United States District Court for the District of Columbia through the CM/ECF

system. I further certify that service was accomplished pursuant to the Court's electronic filing

procedures.


  /s/ Suzanne Summerlin

D.C. Bar No. 1044859
Phone: (202) 216-4428
Fax:    (202) 898-1861
Email: ssummerlin@nffe.org

Attorney for Plaintiff NFFE